UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAHID R. and ANN C. KHAN, *et al.* ) <br> ) <br> Petitioners, ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> acting by and through the INTERNAL ) <br> REVENUE SERVICE, ) <br> ) <br> ) <br> Respondent. ) | No. 07 C 2570 (consolidated with <br> Case Nos. 07 C 2571, 07 C 2573, <br> 07 C 2574, 07 C 2575, and 07 C 2583) <br> <br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

On or about April 16, 2007, the Internal Revenue Service ("IRS") issued six summonses upon Robert Greisman ("Greisman"), a tax accountant and lawyer with BDO Seidman, LLP ("BDO"), an accounting firm. The summonses seek Greisman's testimony in connection with the IRS's investigation and audit of Shahid and Ann Khan and five investment entities in which Mr. Khan is a common partner, member, or owner—Uviado, LLC; SRK Wilshire Partners, LLC; KPASA, LLC; Jonction, LLC; and SRK Wilshire Investors, LLC (collectively, the "entities")—for the years 1999 through 2003. (R. 1, Pet. to Quash, Ex. A, Summons.) The Khans and their entities (collectively, "Petitioners") each filed a nearly identical petition to quash the summonses pursuant to 26 U.S.C. § 7609(b)(2). (*See* R. 1, Pet. to Quash.) This Court granted Petitioners' motion to consolidate all six petitions to quash. (R. 13, 7/10/07 Order.) The United States has moved for summary denial of the petitions to quash and for an order enforcing the IRS summonses. (R. 28, Gov't Resp. to Pet. to Quash.)

## BACKGROUND

On September 28, 2007, the government filed a declaration by Larry Weinger, a Revenue

Agent for the IRS ("Agent Weinger"), together with its response to the petition to quash. (R. 30, Weinger Decl.) Agent Weinger is assigned to examine the federal income tax returns filed by Petitioners for the tax years 1999 through 2003. (*Id.* ¶ 2.) Based on his examination, Agent Weinger believes that the Khans and their entities engaged in at least five transactions that the IRS has identified as potentially abusive tax shelters. (*Id.* ¶ 4.) BDO was involved with these transactions and promoted them to the Khans and their entities. (*Id.* ¶¶ 6-8.)

The Khans' trial counsel hired Greisman and his firm on May 23, 2003. (R. 1, Pet. to Quash ¶¶ 18, 20-21.) Greisman was not involved in either the Petitioners' original investments or the preparation of returns for Khan and his entities. (*Id.*) Greisman was involved in supplying certain of Petitioners' information to the IRS. (*Id.*) Additionally, Agent Weinger believes that Greisman was involved in advising, promoting, and/or consulting with the Khans regarding the tax shelters. (*Id.* ¶ 9.) Greisman was a partner and member of BDO's Tax Solutions Group and is listed in BDO's Tax Sales Manual as a Technical Expert in several different types of tax shelters. (*Id.* ¶¶ 9-10.) Agent Weinger believes that Greisman met with and provided accounting and professional services to the Khans and their entities, and initially represented them during the IRS's audit examination. (*Id.* ¶¶ 19-20.) In addition, Agent Weinger attests that Greisman may have been involved in the execution of the tax shelter transactions during the periods under examination. (*Id.* ¶ 19.) The Khans and their entities paid BDO $8,505,000 in fees for various services, including tax return preparation, during this time period. (*Id.* ¶ 10.) Petitioners deducted $2,000,000 of this amount on their 2002 tax return and $1,500,000 on their 2003 tax return. (*Id.*)

On April 26, 2007, Agent Weinger interviewed Petitioner Shahid Khan ("Mr. Khan").

2

(*Id.* ¶ 11.) During that interview, Mr. Khan claimed that he could not answer numerous questions and directed Agent Weinger to ask BDO for the responsive information. (*Id.*) Agent Weinger states that as of the date of his Declaration, the IRS had not issued a notice of completion of its administrative proceeding[1] or a determination of Petitioners' tax deficiencies[2] has been issued to the Khans or their entities for the relevant periods, and no "Justice Department referral" was in effect with respect to the Khans or their entities for the relevant periods. (*Id.* ¶¶ 12-13.)

The summonses at issue seek Greisman's testimony about his and BDO's knowledge of and involvement in Petitioners' various tax transactions. (*Id.* ¶ 14.) Agent Weinger has not yet interviewed Greisman in connection with this matter, and Weinger states that the information sought from Greisman is not yet in the IRS's possession. (*Id.* ¶ 17.) Agent Weinger further represents that Greisman's testimony is relevant to the correct determination of the federal income tax liabilities of the Khans and their entities for the periods under examination. (*Id.* ¶ 18.)

## ANALYSIS

Petitioners initially set forth seven reasons to quash the IRS summonses: (1) Greisman's testimony is protected on the grounds of the work product, attorney-client, and tax practitioner privileges; (2) the summonses are barred under *res judicata* or collateral estoppel; (3) the IRS already possesses all of Greisman's unprotected information; (4) Greisman's testimony is irrelevant because the IRS has reached its audit conclusion already; (5) the summonses

---

[1] This notice is also known as a "Final Partnership Administrative Adjustment."

[2] This determination is also called a "Statutory Notice of Deficiency."

improperly seek to circumvent Chief Judge Holderman's order in a separate case involving the same parties; (6) the summonses are overly broad and onerous; and (7) the summonses lack a good faith basis. (R. 21, Mem. in Supp. of Pets. to Quash at 1-2.) In their reply brief, Petitioners add the argument that the summonses violate the terms of 26 U.S.C. § 7602(c), which prohibits the issuance of a summons if a Justice Department referral is in effect. (R. 31, Pet. Reply at 5-6.) This Court granted the government leave to file a reply in response to Petitioners' new argument. (*See* R. 35, Gov't Reply.)

I.   **IRS Summons Power**

The IRS's power to issue a summons stems from Section 7602 of the Internal Revenue Code, 26 U.S.C. § 7602. Section 7602 grants the IRS "broad power" to issue a summons to investigate violations of the tax code. *Miller v. United States*, 150 F.3d 770, 772 (7th Cir. 1998). Specifically, Section 7602 states:

> a) Authority to summon, etc.–For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized–
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

4

> (3) To take such testimony of the person concerned, under oath, as
> may be relevant or material to such inquiry.

26 U.S.C. § 7602. The IRS's summons power "is understood to be vital to the efficacy of the federal tax system, which seeks to assure that taxpayers pay what Congress has mandated and to prevent dishonest persons from escaping taxation thus shifting heavier burdens to honest taxpayers." *United States v. BDO Seidman*, 337 F.3d 802, 810 (7th Cir. 2003) ("*BDO Seidman I*") (internal citations omitted). "[T]he very language of § 7602 reflects . . . a congressional policy choice in favor of disclosure of all information relevant to a legitimate IRS inquiry." *Id.* (quoting *United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984)).

## II. Justice Department Referral

The Court addresses Petitioners' last argument for quashing the summonses first, as we find this argument determinative.[3] Petitioners argue that the summonses must be quashed if a "Justice Department referral" is in effect for Petitioners and/or Greisman. Section 7602(d) of the Internal Revenue Code forbids the issuing or enforcement of a summons "with respect to any person if a Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d)(1). This is "[t]he only express statutory ground for quashing a tax summons . . . ." *United States v. Michaud*, 907 F.2d 750, 758 (7th Cir. 1990) (Posner, J., dissenting). A Justice Department referral is in effect with respect to any person if "(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, or (ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return

---

[3] Accordingly, this Court does not reach Petitioners' additional arguments in their petition to quash.

5

information (within the meaning of section 6103(b)) relating to such person." 26 U.S.C. § 7602(d)(2)(A).

Agent Weinger has attested that "[a]s of the date of this declaration, there is no 'Justice Department referral,' as that term is described in 26 U.S.C. § 7602(d), in effect with respect to the Khans for any of the periods in issue." (R. 30, Weinger Decl. ¶ 13.) This representation satisfies this Court that Petitioners have not been referred to the Justice Department for criminal prosecution. *See United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999) (holding that the government can usually satisfy its burden of demonstrating the propriety of an IRS summons through an affidavit of one of its agents).

Petitioners argue, however, that the summonses are statutorily deficient because the government has not revealed whether a Justice Department referral is in effect with respect to Greisman, the party being summonsed. (R. 37, Pet. Sur-Reply at 1-2).[4] The government counters that whether a Justice Department referral is in effect with respect to Greisman is irrelevant because the statute only pertains to the person whose tax liability is being examined, not the witness. (R. 35, Gov't Reply at 1.) The statute itself supports the Petitioners' broader interpretation of when enforcement of a summons is barred. Section 7602(d) states that no summons may be issued or enforced "with respect to *any person* if a Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d) (emphasis added). In this case, the summons was issued "with respect" to Greisman, but the government has not disclosed whether a Justice Department referral is in effect "with respect" to him.

The regulations behind Section 7602 do not aid the Court in interpreting whether Section

---

[4] Petitioners also filed the identical sur-reply a week later. (R. 40.)

6

7602(d) applies to Greisman as well as to the those whose tax liability is at issue. Regulation 301.7602-1(c)(1) speaks only to when a Justice Department referral is in effect as to the person whose tax liability is at issue: "The Commissioner may neither issue a summons under this title nor initiate a proceeding to enforce a previously issued summons by way of section 7604 with respect to any person whose tax liability is in issue, if a Justice Department referral is in effect with respect to that person for that liability." 26 C.F.R. § 301.7602-1(c)(1). This regulation does not address whether a summons may be enforced with respect to a third-party witness subject to a Justice Department referral, and under basic principles of statutory construction, the regulation cannot be used to narrow the scope of the statute. *See Diersen v. Chicago Car Exchange*, 110 F.3d 481, 486 (7th Cir. 1997) (a statute cannot be amended or altered by regulation); *see also Water Quality Ass'n Employees' Benefit Corp. v. United States*, 795 F.2d 1303, 1309 (7th Cir. 1986) (agency regulations may not be used to alter, amend, or narrow a statute, thus "effectively attempt[ing] to legislate rather than interpret the revenue laws.").

Similarly, the language the government quotes from a 1978 Report of the Senate Finance Committee only discusses the situation where a Justice Department referral is in effect as to the person whose tax liability is at issue: "the Secretary may not issue any summons or commence any action to enforce a summons if a Justice Department referral is in effect with respect to the person whose tax liability is in issue." (R. 35, Gov. Reply at 5 (citing S.Rep. No. 97-494 at 286 (1978)). The absence of language regarding a Justice Department referral as to a third-party witness does not negate the broader "any person" language of Section 7602(d), which would include prohibiting enforcement of summons issued to third parties who have been referred to the Justice Department.

7

The parties have not cited a case, nor could the Court find one, which specifically addresses whether Section 7602(d) bars enforcement of a summons issued to a third party who has been referred to the Justice Department for criminal prosecution. The case law interpreting the Justice Department referral in other circumstances suggests that what matters is not whether a Justice Department referral is in effect for a particular taxpayer or witness, but whether the *subject matter* has been referred to the Justice Department. In the seminal Supreme Court case underlying the enactment of Section 7602(d), the Court stated that a summons may not issue after a Justice Department referral "which reasonably would relate to the subject matter of the summons." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 318 (1978).

Whether the "subject matter" of the summons here is limited to Petitioners' tax liability, or whether the broader issue of the potentially abusive tax shelters underlying Petitioners' liability "reasonably would relate to the subject matter of the summons," is not clear. In the instant case, Agent Weinger attested only that no Justice Department referral was "in effect with respect to the Khans." (R. 30, Weinger Decl. ¶ 13.) Notably absent is any representation that there has been no Justice Department referral with respect to the potentially abusive tax shelters that Greisman and BDO allegedly promoted to the Khans, or specifically, with respect to Greisman. (*See id.* ¶ 9.) If a Justice Department referral exists as to Greisman based on his involvement in the tax shelters allegedly used by the Khans and their entities, his proposed testimony pursuant to the civil summonses in this case may implicate him in a criminal prosecution. The policy behind the Justice Department referral exception is to prevent use of the civil summons as a mechanism to broaden the Justice Department's right of criminal litigation discovery. *LaSalle Nat'l Bank*, 437 U.S. at 312. Allowing the government to examine Greisman

8

pursuant to a civil summons, if a criminal referral is in effect as to him, would violate this policy.[5]

The government further argues that even if Section 7602(d) applies to Greisman, the government is prohibited from disclosing whether a Justice Department referral is in effect with respect to him under 26 U.S.C. § 6103. (R. 35, Gov't Reply at 4.) Section 6103 mandates that tax returns and return information shall be kept confidential. 26 U.S.C. § 6103(a). "Return information" includes "whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense." 26 U.S.C. § 6103(b)(2)(A). The disclosure of whether a Justice Department referral is in effect with respect to Greisman would fall within this definition, as it would reveal the possible existence of his liability for a tax, penalty, fine, or offense in the matter of the tax shelters at issue in this case.

Disclosure may be allowed, however, if one of the statutory exceptions to Section 6103 applies. A return or return information may be disclosed in a federal judicial proceeding pertaining to tax administration:

---

[5] In fact, Greisman, as a third party to the IRS's investigation of Petitioners, may deserve even greater protection against a burdensome summons. *See United States v. Bisceglia*, 420 U.S. 141, 157 (1975) (Stewart, J., Douglas, J. dissenting) (stating that "federal courts have always scrutinized with particular care any IRS summons directed to a 'third party,' *i.e.*, to a party other than the taxpayer under investigation."); *see also United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 735 (6th Cir. 2006) (holding that third party to IRS's investigation deserved greater protection against burdensome summons).

9

> (A) if the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of such civil liability, in respect of any tax imposed under this title;
>
> (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;
>
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or
>
> (D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.
>
> However, such return or return information shall not be disclosed as provided in subparagraph (A), (B), or (C) if the Secretary determines that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation.

26 U.S.C. § 6103(h)(4)(A)-(D). Section 6103(h)(4)(A) does not apply because Greisman is not a party to the federal judicial proceeding here. Likewise, Section 6103(h)(4)(D) does not apply here because this is a civil tax proceeding to enforce an IRS administrative summons, not a criminal prosecution.

Nevertheless, Section 6103(h)(4)(C) does apply. Greisman's potential liability is directly related to the resolution of an issue in this case—the use of potentially abusive tax shelters—and whether a Justice Department referral is in effect with respect to Greisman directly relates to the transactional relationship between Petitioners and Greisman. The government's own arguments support this finding, as it argued that Greisman's involvment in recommending and

implementing the allegedly potentially abusive tax shelters for the Khans demonstrate the relevance of Greisman's testimony to the IRS's investigation and audit in Petitioners' case. Indeed, Agent Weinger's declaration shows that Greisman was a member of BDO's tax solutions group and may have been involved in developing the tax-advantaged investments entered into by Khan. (R. 37, Pet. Sur-Reply at 6.) The government has not argued against disclosure based on "the Secretary['s] determin[ation] that such disclosure would identify a confidential informant or seriously impair a civil or criminal tax investigation." 26 U.S.C. § 6103(h)(4).

The government, however, has refused to state whether or not a Justice Department referral is in effect with respect to Greisman. On January 4, 2008, this Court ordered the government to produce an affidavit *in camera* stating whether a Justice Department referral is in effect with respect to Greisman. (R. 41, 1/4/08 Order.) In its *in camera* affidavit, the government refused to provide the requested information on the grounds set out in its reply brief, that the information is irrelevant and subject to the non-disclosure provisions of Section 6103 of the Internal Revenue Code.[6] (R. 42, Decl. of Elizabeth Davis ¶¶ 3-5.)

Accordingly, as disclosure of whether a Justice Department referral is in effect as to Greisman is allowed under 26 U.S.C. § 6103(h)(4)(C), this Court has no choice but to grant Petitioners' motion to quash pursuant to 26 U.S.C. § 7602(d) because the summonses may not be enforced if a Justice Department referral is in effect as to Greisman.[7]

---

[6] In its *in camera* filing, the government states that it would not oppose entry of an order unsealing the document. (R. 42.) Finding no reason to keep this document under seal, this Court will enter an order unsealing the document.

[7] Petitioners request limited discovery to allow them to determine whether the IRS issued the summonses for an improper purpose. (R. 31, Pet. Reply at 4.) Petitioners' request for discovery is moot, as this Court has granted their petition to quash.

## CONCLUSION

This Court takes very seriously its decision to limit the IRS's summons power in this case. This Court agrees with the Seventh Circuit that the IRS's summons power is "vital to the efficacy of the federal tax system, which seeks to assure that taxpayers pay what Congress has mandated and to prevent dishonest persons from escaping taxation thus shifting heavier burdens to honest taxpayers." *BDO Seidman I*, 337 F.3d at 810. Nevertheless, the constitutional right of a criminal defendant to avoid self-incrimination is equally important. The plain language of Section 7602(d) applies to "any person." Therefore, this Court has carefully applied the statute to Greisman to avoid any potential infringement on his constitutional rights.

Petitioners' motion to quash (R. 1) is thus granted, and the government's motion to enforce the summonses is denied. (R. 28, Gov. Resp. and Mot. to Enforce.) The corresponding motions to quash (R. 1) in consolidated cases 07 C 2571, 07 C 2573, 07 C 2574, 07 C 2575, and 07 C 2583 are also granted for the reasons contained herein. Petitioners' request for discovery is moot. The Clerk of the Court is directed to enter final judgment in favor of the Petitioners in this case and all of the consolidated cases. Each party will bear their own costs.

Entered: *[signature]*

Judge Ruben Castillo
United States District Court

Dated: **January 28, 2008**